IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIKA N.[1],

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:25-cv-00977-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

Plaintiff Danika N. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits and Social Security Income under the Social Security Act ("Act"). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party in this case.

Page 1 – OPINION AND ORDER

**PROCEDURAL BACKGROUND**

Born in 1993, plaintiff alleges disability beginning January 1, 2021, due to attention deficit hyperactivity disorder ("ADHD"), back injury, and Ehlers Danlos syndrome ("EDS"). Tr. 269, 280. Her claims were denied initially and upon reconsideration. On March 12, 2024, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 37-55. On May 9, 2024, the ALJ issued a decision finding plaintiff not disabled. Tr. 18-30. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

**THE ALJ'S FINDINGS**

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 21. At step two, the ALJ determined the following impairments were medically determinable and severe: "L5-S1 annular tear, Ehlers Danlos Syndrome, and fibromyalgia." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 22.

Because he did not establish a presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work except: "[s]he can never crawl or climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, stoop, kneel, and crouch. She can tolerate occasional exposure to extreme cold and vibration. She can tolerate no exposure to hazards such as unprotected heights and moving mechanical machinery." Tr. 23.

At step four, the ALJ concluded, based on the VE's testimony, plaintiff could perform past relevant work as a server. Tr. 28. At step five, the ALJ made alternative findings concluding

Page 2 – OPINION AND ORDER

plaintiff could also perform other jobs within the national economy despite her impairments. Tr. 28-29.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) improperly discounting her subjective symptom testimony; (2) improperly assessing the medical opinions of Sheri Laird, M.D., ("Dr. Laird") and Tammy Luoh, MD, ("Dr. Luoh"); and (3) not accounting for all plaintiff's limitations in her RFC and not supporting his conclusions at steps four and five.

## I.      Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting her testimony concerning her physical limitations. Pl. Br. 13-22, ECF 9; Pl. Reply Br. 2-11, ECF 16. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted).[2] A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

---

[2] There is no allegation or affirmative evidence of malingering.

Page 3 – OPINION AND ORDER

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

In plaintiff's function report, she testified her impairments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and concentrate. Tr. 324. She explained she would need to stop and rest after walking a block and could only pay attention for a few minutes at a time. *Id.* Plaintiff stated she cared for her two children with the assistance of her parents. Tr. 316. She reported she could not do house or yard work because "it[']s too much on [her] body." Tr. 321. She explained she prepared microwaveable or simple oven meals and "no longer prepared meals like how she did before her conditions began." *Id.*

At her March 2024 hearing, plaintiff testified she was unable to work because she occasionally suffered "excruciating pains" that prevented her from moving out of bed. Tr. 47. She testified she suffered pain in her lower back, and although some days her back was "fine," "some days it just flares up." *Id.* Plaintiff stated her entire body hurt when she had a flare up. Tr. 48. She reported her flare ups could last for up to two days and occurred two to three times a month. *Id.* She described how "even laying on the couch hurts" when experiencing a bad pain flare up and how she would need assistance to move on the couch. Tr. 48. Plaintiff testified she could shower on a good day but would still be unable to lift her daughter out of her crib. Tr. 49. Plaintiff stated

Page 4 – OPINION AND ORDER

she lived with her boyfriend who helped her with household tasks such as washing dishes and taking clothes out of the laundry machines. Tr. 49-50. She stated she could complete tasks on a computer for up to thirty minutes before needing a fifteen-to-twenty-minute break. Tr. 50-51. Similarly, she reported needing to pull over and readjust her back every thirty minutes when driving. Tr. 51.

After summarizing plaintiff's testimony, the ALJ determined her medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 24. The ALJ cited inconsistent objective evidence, conservative treatment, improvement with treatment, and plaintiff's activities of daily living ("ADL") to support his conclusion. Tr. 24-26. The ALJ did not apply the proper legal standards in his rationale, and his conclusion is not supported by substantial evidence.

First, the ALJ found plaintiff's testimony inconsistent with the record because "[s]he showed no signs of distress or pain behavior when seeing providers during the period at issue" and "was also observed to have a normal gait." Tr. 24, 473, 497-98, 846, 951, 1384, 1395, 1399, 1408, 1439, 1445, 1455, 1479, 1486, 498. Unremarkable objective medical evidence and evidence inconsistent with plaintiff's allegations, such as listed here by the ALJ, was not a legally sufficient reason for him to discredit plaintiff's testimony. Tr. 24; *Kelly v. Berryhill*, 732 Fed.Appx. 558, 563 (9th Cir. 2018); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (holding an ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")

Page 5 – OPINION AND ORDER

It was undisputed plaintiff suffered from EDS, fibromyalgia, and a L5-S1 annular tear and that those impairments "could reasonably be expected to cause the alleged symptoms." Tr. 21, 24. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). In other words, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's testimony where, as here, the ALJ's other reasons are not supported by substantial evidence.

The ALJ also highlighted other evidence he found inconsistent with plaintiff's testimony. Tr. 24. The ALJ noted plaintiff wrote in her disability application she stopped working "because of her conditions" but told a provider she stopped working because she declined to receive a COVID vaccination. Tr. 24, 280, 833. That was not an inconsistency because plaintiff also wrote on her disability application, she stopped working "because of other reasons… I also was let go from my recent job due to covid." Tr. 280. The ALJ also found a medical note wherein plaintiff described her EDS as "mild type" to a provider and that her description "seem[ed] inconsistent with her allegations." Tr. 24, 495-496. The ALJ failed to contextualize the quote because plaintiff described her EDS as "the mild type" while comparing herself to her brother with EDS who "had a hip replacement at age 13 and has 'heart valve' problems." Tr. 496. Lastly, the ALJ noted plaintiff "reported that a symptom onset in mid-2022, which is inconsistent with her allegations of disabling symptoms since late 2021." Tr. 24, 1214, 236. That was not a clear inconsistency because plaintiff alleged disability due to EDS, back injury, and ADHD. Tr. 280. That plaintiff informed her provider of a symptom onset in mid-2022 was not necessarily inconsistent with plaintiff

experiencing other disabling symptoms since January 1, 2021. Tr. 1214, 236, 280. Plaintiff's symptoms could have been disabling beginning on January 1, 2021, and she still could have had symptoms worsen later in mid-2022.

Second, the ALJ referred to plaintiff's "routine" treatment as a reason to discount plaintiff's subjective symptom testimony. Tr. 25. The ALJ highlighted plaintiff's routine treatment of "physical therapy for back, hip, and knee pain in late 2022 and early 2023" while also acknowledging plaintiff's non-routine treatment of receiving "a series of lidocaine injections for back pain." Tr. 24-25, 1191-1201, 1483-85. An ALJ must consider the claimant's reasons for not seeking treatment. *See* SSR 16-3p, available at 2017 WL 5180304 (ALJ may not find an "individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons [they] may not comply with treatment or seek treatment consistent with the degree of [their] complaints").

Here, the ALJ failed to consider how plaintiff sought additional specialized and surgical treatment but was unsuccessful. Tr. 24-25, *see* tr. 1249-50 (plaintiff left five voicemails at a specialty pain clinic but was turned down because they were not taking new patients), 1463-64 (two other pain management clinics rejected plaintiff because they did not accept her insurance), 1494 (plaintiff sought surgery but did not qualify: "[patient] states she has been in [physical therapy/chiropractor care] for a while" but because she still suffered symptoms, "wants to know if she qualifies for surgery. 'She doesn't quite meet the criteria…' "). "[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Trevizo v. Berryhill*, 871 F.3d 664, 680-81 (9th Cir. 2017) (as amended) (citing *Gamble v.*

Page 7 – OPINION AND ORDER

*Chater*, 68 F.3d 319, 321 (9th Cir. 1995)). The ALJ erred by discounting plaintiff's testimony on the basis of routine treatment because plaintiff received non-routine treatment, such as lidocaine injections, and sought additional treatment beyond physical therapy and chiropractic treatment.

Third, the ALJ cited plaintiff's improvement with treatment as a reason to discount her testimony. Tr. 25. The ALJ found plaintiff "reported her pain improved somewhat with Cymbalta in February and April 2023" and "reported that Cymbalta/duloxetine was working better and helping with her energy levels in September 2023." Tr. 25, 1382-84, 1450. He further found plaintiff's continued use of Cymbalta to treat her fibromyalgia through early 2024 "suggest[ed] she had at least some benefit from this treatment." Tr. 25, 1437. Plaintiff argues the ALJ erred by not explaining how, even if Cymbalta improved her symptoms, her symptoms improved to the extent her testimony was inconsistent with the record. Pl. Br. at 20, citing tr. 1437, 1443, 1454; *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (holding the ALJ erred to find some improvement with treatment was "enough that her testimony regarding pain was incredible" when the record demonstrated no lasting improvement despite efforts to relieve pain). Plaintiff is correct. The ALJ failed to explain how her "somewhat" improvement with treatment undermined her symptom testimony. Tr. 25.

Fourth, the ALJ cited plaintiff's ADL to discount her symptom testimony. He concluded "[plaintiff's] ability to take care of two children seem[ed] inconsistent with the extent of her alleged limitations in activities of daily living." Tr. 25-26. Inconsistent daily activities may justify rejecting symptom testimony, nevertheless, "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (alteration in original) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). One need not be relegated to vegetating in a dark

Page 8 – OPINION AND ORDER

room in order to be eligible for benefits. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2009) (citing *Cooper v. Bowen*, 815 F.2d 557, 661 (9th Cir. 1987)); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (ability to carry out minimal activities such as reading, watching television, and coloring in coloring books does not detract from allegation of overall disability); *Reddick,* 157 F.3d at 722 ("claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability").

"ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Here, the ALJ improperly concluded plaintiff's ability to care for her two children was inconsistent with her symptom testimony. The activities the ALJ identified above are compatible with plaintiff's alleged limitations, especially when considered within their full context —and thus cannot be used to attack plaintiff's credibility. *See Reddick*, 157 F.3d at 722; *see also Kelly*, 732 Fed.Appx. at 563 (holding an ALJ may not rely on daily activities stripped of critical nuance to discount plaintiff's subjective symptom testimony). For example, plaintiff's parents helped her care for her children, she sat to fold laundry, shopped for groceries online and used curbside pickup, and had her boyfriend pull the laundry out of the machine for her because "reaching in and bending over to pull those clothes out is pretty painful." Tr. 316, 321, 322, 50.

In sum, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's physical symptom testimony. The ALJ's decision is reversed as to this issue.

Page 9 – OPINION AND ORDER

## II.     Medical Opinion Evidence

Plaintiff argues the ALJ erred by improperly evaluating the medical opinions of plaintiff's primary care physician Dr. Laird and state agent medical consultant Dr. Luoh. Pl. Br. 22-28. Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[3] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods*, 32 F.4th at 791–92 (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id*. (citing 20 C.F.R § 404.1520c(c)(2)). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Kevin R. H.*, 2021 WL 4330860 at *4. At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

//

---

[3] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

### A.    Sherri Laird, MD

Plaintiff argues an unsigned physician's report from July 29, 2016, was the medical opinion of her primary care physician, Dr. Laird. Pl. Br. 22-26; tr. 371. The ALJ found the record was "an unsigned statement from a chiropractor." Tr. 26. The physician report at issue had Dr. Laird's name on the letterhead, but there was no name or signature on the document. Tr. 371. Regardless of who wrote the opinion, the ALJ correctly concluded the opinion was "neither persuasive nor useful for evaluating the claimant's residual functional capacity" because it was a statement on an "issue reserved for the Commissioner." Tr. 26.

Where a medical source states a claimant is disabled (*i.e.*, cannot perform work activities due to impairment), the statement is "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(3)(i), 416.920b(3)(i); *McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) (opinions on the ultimate issue of disability are not binding on an ALJ). A medical opinion solely declaring plaintiff disabled is not valuable to an ALJ because whether plaintiff is disabled constitutes a statement on an "issue[] reserved to the Commissioner."   20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3). That is because disability under the Act is not a medical determination, but a legal determination made by the Commissioner. *McLeod*, 640 F.3d at 885.

Here, the unsigned report stated plaintiff was "Unable to Return to Work" but did not provide opinions on why plaintiff could not work or what limitations plaintiff experienced. *See* tr. 371. Further, the section of the opinion where plaintiff's "modified work capabilities" could be elaborated was crossed out and left blank. *Id.* The Commissioner correctly argues the ALJ was not required to provide "any analysis about how [he] considered such evidence in our determination or decision" because the opinion was on the ultimate issue of disability. Def. Br. 12, ECF 13,

quoting § 404.1520b(c); tr. 371. Thus, the ALJ did not err in concluding that the unsigned report was unpersuasive.

### B.    Tammy Luoh, M.D.

In plaintiff's initial disability determination, state agency medical consultant Dr. Luoh opined plaintiff could work full-time at a medium exertional level. Tr. 62-63, 69-70. Dr. Luoh wrote plaintiff had symptoms of pain, fatigue, and sustained concentration and persistence related symptoms. Dr. Luoh reported that the plaintiff could occasionally lift or carry up to fifty pounds and frequently lift or carry up to twenty-five pounds. Tr. 62, 69. She noted plaintiff could sit, stand, and walk for a total of about six hours in an eight-hour workday. Tr. 62, 69. She wrote plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. Tr. 62, 69. She noted plaintiff had a history of chronic pain, EDS, normal gait, full motor strength, and a mildly reduced range of motion with pain. Tr. 62, 69. Dr. Luoh opined plaintiff's symptom testimony was partially consistent with the medical and non-medical evidence of the record. Tr. 62, 69. Dr. Luoh explained plaintiff's testimony was partially consistent because although plaintiff complained of trouble focusing, she could manage her finances, care for her children, read, and reported no issues with following directions. Tr. 62, 69.

The ALJ concluded Dr. Luoh's opinion was partially persuasive. Tr. 26. The ALJ determined Dr. Luoh's opinion was persuasive "to the extent that it implies the claimant can sustain light work at a fulltime job." Tr. 24, 58-64, 65-71.

Regarding supportability, the ALJ adequately discussed the strength of the evidence underlying Dr. Luoh's opinion when finding it partially persuasive. Tr. 26-27. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to

Page 12 – OPINION AND ORDER

support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ reasoned "[t]he normal medical imaging of the spine, the normal gait and strength, the only mildly reduced range of motion, and the claimant's ability to engage in typical activities of daily living generally support[ed] Dr. Luoh's opinion." Tr. 26. However, the ALJ also found plaintiff's "activities of daily living were more limited than noted by Dr. Luoh." Tr. 27, 316-26. He concluded, when considering plaintiff's limitations in daily activities in conjunction with her "frequent reports of pain symptoms to providers," Dr. Luoh's opinion was unsupported to the extent plaintiff could sustain medium work for a fulltime job without difficulty. Tr. 27. Accordingly, he concluded Dr. Luoh's opinion was only partially supported. The ALJ adequately considered the supportability of Dr. Luoh's opinion and reasonably evaluated how Dr. Luoh's opinion was generally, but not entirely, supported.

The ALJ also adequately addressed the consistency of Dr. Luoh's opinion. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Here, the ALJ found Dr. Luoh's opinion, "to the extent that the physical assessment implies that the claimant is capable of light work," was consistent with:

> the limited reports of flare-ups of pain to providers, the mostly routine treatment for physical impairments, the reports of benefiting from treatment with Cymbalta, the limited observations of pain behavior or fatigue, the mostly normal medical imaging of the spine, and the mostly normal examination findings from the January 2023 consultative examination

Tr. 27, 406-09, 473, 497-98, 846, 951, 1233-40, 1384, 1395, 1399, 1408, 1439, 1445, 1455, 1479, 1486, 1542-43, 1547-48.

When "evidence is susceptible of more than one rational interpretation," the ALJ's conclusion "must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Ultimately,

Page 13 – OPINION AND ORDER

the ALJ sufficiently addressed the consistency and supportability factors and supported his conclusion that Dr. Luoh's opinion was partially persuasive with substantial evidence.

### III.    RFC, Steps Four and Five

Finally, plaintiff asserts the ALJ erred by failing to include all her limitations in her RFC and by not supporting his conclusions at steps four and five with substantial evidence. Pl. Br. at 28-36. The RFC must contemplate all medically determinable impairments, including those which the ALJ found non-severe, and evaluate all the relevant testimony, including the opinions of medical providers and the subjective symptom testimony set forth by the claimant. 20 C.F.R. §§ 404.1545, 404.1545; SSR 96–8p available at 1996 WL 374184. In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only those limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, plaintiff's arguments that the RFC failed to account for all her functional limitations are specifically tied to the ALJ's rejection of the contested medical and subjective symptom evidence. In concluding the ALJ improperly discounted plaintiff's subjective symptom testimony, the Court necessarily concludes that the ALJ failed to fashion an RFC accurately reflecting all plaintiff's limitations. Similarly, plaintiff's arguments that the ALJ committed harmful error at steps four and five are tied to her argument the ALJ failed to fashion an accurate RFC. Thus, because the ALJ failed to formulate an RFC supported by substantial evidence, the Court concludes the ALJ committed harmful error at steps four and five.

//

//

Page 14 – OPINION AND ORDER

## IV.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose is served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence improperly rejected by the ALJ to determine whether a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

As discussed herein, the ALJ failed to support his discounting of plaintiff's testimony with substantial evidence, and that underlying error led to further harmful error in the formulation of plaintiff's RFC, step four, and step five. Without an accurate RFC and corresponding hypotheticals, there is insufficient evidence to find whether plaintiff was disabled during the relevant dates. *See Strauss*, 635  F.3d at 1138 (ALJ's reversible error did not warrant award of social security disability benefits, absent an affirmative finding claimant was, in fact, disabled).

As such, further proceedings are required to resolve this case. *See Benecke*, 379 F.3d at 593 ("Remand for further administrative proceedings is appropriate if enhancement of the record would be useful"); *see also Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings).

Page 15 – OPINION AND ORDER

Therefore, upon remand, the ALJ must reevaluate plaintiff's symptom testimony, reformulate her

RFC, and obtain additional VE testimony.

## CONCLUSION

For the above reasons, the Commissioner's decision is REVERSED, and this case

is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 28th day of July, 2026.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge

Page 16 – OPINION AND ORDER